**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| OLU ADEFUMI, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | Case No. 10 C 2184 |
| v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

**MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

Before the Court is pro se Petitioner Olu Adefumi's motion to vacate, set aside, or
correct his sentence pursuant to 28 U.S.C. § 2255. For the following reasons, the Court denies
Petitioner's Section 2255 motion. Further, the Court declines to certify any issues for appeal
pursuant to 28 U.S.C. § 2253(c)(2).

**LEGAL STANDARD**

"[R]elief under § 2255 is an extraordinary remedy because it asks the district court
essentially to reopen the criminal process to a person who already has had an opportunity for full
process." *Almonacid v. United States*, 476 F.3d 518, 521 (7th Cir. 2007); *see also Echevarria v.
United States*, 688 F. Supp. 2d 805, 807 (N.D. Ill. 2010). "[R]elief under § 2255 is available
only when the 'sentence was imposed in violation of the Constitution or laws of the United
States,' the court lacked jurisdiction, the sentence was greater than the maximum authorized by
law, or it is otherwise subject to collateral attack." *Torzala v. United States*, 545 F.3d 517, 521
(7th Cir. 2008) ("It is not easy to vacate a guilty plea in a collateral proceeding. . . . [A]
defendant who knowingly and voluntarily enters a guilty plea admits not simply that he

committed the acts charged in the indictment; it is an 'admission that he committed the crime charged against him.'") (quoting *Young v. United States*, 124 F.3d 794, 797 (7th Cir. 1997))); *see also Hays v. United States*, 397 F.3d 564, 566-67 (7th Cir. 2005).

A Section 2255 motion is not a substitute for a direct criminal appeal, nor is it a means by which a defendant may appeal the same claims a second time. *See Varela v. United States*, 481 F.3d 932, 935 (7th Cir. 2007) (noting that a Section 2255 motion is "neither a recapitulation of nor a substitute for a direct appeal") (citation omitted). Accordingly, if a Section 2255 petitioner does not raise a claim on direct appeal, that claim is barred from the Court's collateral review unless the petitioner can demonstrate cause for the procedural default and actual prejudice from the failure to appeal, *see Fuller v. United States*, 398 F.3d 644, 648 (7th Cir. 2005), that enforcing the procedural default would lead to a "fundamental miscarriage of justice," *see Anderson v. Benik*, 471 F.3d 811, 815 (7th Cir. 2006), or that there has been a change of circumstances involving facts or law. *See Varela*, 481 F.3d at 935-36. "[A]n ineffective-assistance-of-counsel claim may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal." *Massaro v. United States*, 538 U.S. 500, 504, 123 S.Ct. 1690, 1694 (2003); *see also Johnson v. United States*, 604 F.3d 1016, 1018 (7th Cir. 2010).

Courts "'need not grant an evidentiary hearing in all § 2255 cases.'" *Almonacid*, 476 F.3d at 521 (quoting *Bruce v. United States*, 256 F.3d 592, 597 (7th Cir. 2001)). A court, rather, "should grant an evidentiary hearing on a § 2255 motion when the petitioner 'alleges facts that, if proven, would entitle him to relief.'" *Sandoval v. United States*, 574 F.3d 847, 850 (7th Cir. 2009) (quoting *Hall v. United States*, 371 F.3d 969, 972 (7th Cir. 2004)); *see also Osagiede v.*

*United States*, 543 F.3d 399, 408 (7th Cir. 2008); *Torzala*, 545 F.3d at 525 ("[Petitioner] did not submit any affidavits in support of his motion, and the district court 'has discretion to deny an evidentiary hearing where the motion, files, and records of the case conclusively show that the prisoner is entitled to no relief.'" (quoting *Cooper v. United States*, 378 F.3d 638, 641-42 (7th Cir. 2004))).

Courts "'can hardly demand of a layman and pauper who draws his petition behind prison walls the skill of one trained in the law.'" *Osagiede*, 543 F.3d at 405 (quoting *Tomkins v. Missouri*, 323 U.S. 485, 487-88, 65 S.Ct. 370 (1945), and noting that "[p]ro se petitioners will, at times, confuse legal theories or draw the wrong legal implications from a set of facts"). Accordingly, courts construe pro se Section 2255 motions liberally. *See McGee v. Bartow*, 593 F.3d 556, 565-66 (7th Cir. 2010).

## BACKGROUND

On May 24, 2006, Petitioner Adefumi pleaded guilty – without a plea agreement – to one count of conspiring to possess and distribute crack cocaine with Francisco Periche-Guillen in violation of 21 U.S.C. § 846 (Count One) and two counts of distributing crack cocaine in violation of 21 U.S.C. § 841(a)(1) (Counts Two and Three). During his change-of-plea hearing, Petitioner admitted that he had distributed crack cocaine in Chicago, Illinois, starting in summer 2001 until at least November 2003. (R. 4-1, 5/24/06 Change of Plea Hr'g Tr. at 28.) In July 2003, Petitioner sold crack two times to a witness cooperating with the FBI. (*Id.* at 29.) Based on these controlled buys, along with information provided by confidential sources and cooperating witnesses, the government estimated that Petitioner had distributed over 1.5 kilograms of cocaine base in the form of crack cocaine. (*Id.* at 22.)

After Petitioner entered his blind guilty plea, a probation officer calculated a total offense level of 38, based on a drug quantity of 1.5 kilograms of crack cocaine, and a criminal history category of III for a Guideline range of 292 to 365 months. *See* U.S.S.G. § 2D1.1(a)(3), (c)(1). After conducting a sentencing hearing on October 20, 2006, the Court concluded that the government had proven – through several witnesses and Petitioner's confession and guilty plea – that Petitioner had distributed over 1.5 kilograms of crack. The Court also denied Petitioner's request to reduce his sentence based on the crack/powder cocaine disparity based on then-controlling circuit precedent. The Court then determined that the probation officer's Guideline calculation was correct and sentenced Petitioner to 292 months' imprisonment, which was at the low end of the Guideline range. (*See* 10/20/06 Sentencing Hr'g Tr. at 243-250.)

On direct appeal, Petitioner argued that he distributed a form of cocaine that did not constitute cocaine base and that he was not responsible for distributing more than 100 grams. Also, Petitioner argued that his sentence was based on the unfairness of the 100:1 ratio between crack and powder cocaine. In light of the Supreme Court's holding that sentencing courts may take the 100:1 disparity into account at sentencing, *see Kimbrough v. United States*, 552 U.S. 85, 128 S.Ct. 558 (2007), the Seventh Circuit vacated Petitioner's sentence and remanded for re-sentencing. On April 2, 2009, the Court re-sentenced Petitioner to 204 months' incarceration. Petitioner Adefumi did not directly appeal his April 2, 2009, sentence. Instead, he filed the present motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.

## ANALYSIS

Petitioner Adefumi argues that he received ineffective assistance of counsel because, "[h]ad counsel discovered [information contained in Francisco Guillen's FBI Form 302] that the

government ultimately relied on in sentencing the petitioner . . . , then the petitioner would have been better positioned to accept the government's initial plea offer."  (R. 1, Mot. at Attach.)  The 302 reflects that Mr. Guillen informed the FBI that he usually sold Petitioner "between 2.25 ounces to 4.5 ounces of crack cocaine on approximately one to two occasions per week throughout the last 1.5 to two year period."  (R. 1, Ex. A, 4/6/04 F. Guillen 302 at 6.)  According to Petitioner, "[h]ad counsel done the necessary investigation and discovered what the government intended to rely on as relevant conduct, [he] would have accepted the [earlier plea] offer and the outcome of the proceedings would have been different."  (R. 1, Mot. at Attach.)

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence."  U.S. Const. Amend. VI. "The Amendment guarantees, among other things, the right to counsel's effectiveness in those proceedings where a right exists also to have counsel appointed or retained," including at sentencing.  *United States v. Parker*, Nos. 09-4044 & 09-4046, – F.3d  –, 2010 WL 2652212, at *2 (7th Cir. June 16, 2010); *see also Osagiede*, 543 F.3d at 406 ("Ineffective assistance of counsel claims are, of course, brought to vindicate the Sixth Amendment right to counsel, since the right to counsel is the right to *effective* counsel." (emphasis in original)).

To establish ineffective assistance of counsel, Petitioner "must demonstrate both deficient performance and prejudice."  *Johnson*, 604 F.3d at 1019; *see also Nunez v. United States*, 546 F.3d 450, 453 (7th Cir. 2008).  Specifically, "[t]o succeed on a claim of ineffective assistance, a prisoner must prove (1) his attorney's performance fell below an objective standard of reasonableness, and (2) he suffered prejudice as a result."  *Wyatt v. United States*, 574 F.3d 455, 457 (7th Cir. 2009) (citing *Strickland v. Washington*, 466 U.S. 668, 687-88, 693, 104 S.Ct.

2052 (1984)).  Courts analyze each element of this *Strickland* standard "in light of the totality of the circumstances, after engaging in an individualized fact-based analysis."  *Osagiede*, 543 F.3d at 408 (citing *Strickland*, 466 U.S. at 687-96, 104 S.Ct. 2052; *Williams v. Taylor*, 529 U.S. 362, 391, 120 S.Ct. 1495, 1512 (2000)).

I.      **Deficient Performance**

A Section 2255 petitioner "bears a heavy burden in challenging his attorney's effectiveness," *United States v. Hatten-Lubick*, 525 F.3d 575, 579 (7th Cir. 2008), because there is a "'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'"  *Wyatt*, 574 F.3d at 458 (quoting *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052); *see also United States v. Recendiz*, 557 F.3d 511, 531 (7th Cir. 2009) (there is a "strong presumption that the attorney performed effectively"); *United States v. Carroll*, 412 F.3d 787, 793 (7th Cir. 2005) (noting that this test is "highly deferential" to counsel).  The Section 2255 petitioner "must establish the specific acts or omissions of counsel that he believes constituted ineffective assistance; [a court] then determine[s] whether such acts or omissions fall outside the wide range of professionally competent assistance."  *Wyatt*, 574 F.3d at 458.

Courts do not "second-guess strategic decisions that were arguably appropriate at the time but that hindsight has revealed to be unwise."  *Stallings v. United States*, 536 F.3d 624, 627 (7th Cir. 2008); *United States v. Cieslowski*, 410 F.3d 353, 360 (7th Cir. 2005) ("Generally when an attorney articulates a strategic reason for a decision, the court defers to that choice.  If an attorney's decision was sound at the time it was made, the decision cannot support a claim of ineffective assistance of counsel." (citations omitted)).  As the Seventh Circuit has stated,

> Because many questions about the facts and how a court or jury will apply the law to those facts cannot be answered by counsel with certitude, "waiving trial entails

6

the inherent risk that the good-faith evaluations of a reasonably competent
attorney will turn out to be mistaken either as to the facts or to what a court's
judgment might be on given facts."

*Bethel v. United States*, 458 F.3d 711, 717 (7th Cir. 2006) (quoting *McMann v. Richardson*, 397

U.S. 759, 770, 90 S.Ct. 1441 (1970)).

In connection with a client's guilty plea, "[a] reasonably competent attorney 'will attempt

to learn all of the relevant facts of the case, make an estimate of the likely sentence, and

communicate the results of that analysis to the client before allowing the client to plead guilty.'"

*United States v. Peleti*, 576 F.3d 377, 383 (7th Cir. 2009) (quoting *Bethel*, 458 F.3d at 717).

"The salient question is whether counsel undertook a good-faith effort to determine the

applicable facts and estimate the sentence." *Bethel*, 458 F.3d at 717.

Because Petitioner's claim can be resolved entirely under the prejudice prong, the Court

does not address whether defense counsel's performance was deficient.

## II.     Prejudice

The prejudice requirement recognizes the Supreme Court's "conclusion that 'an error by

counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a

criminal proceeding if the error had no effect on the judgment.'" *Hill v. Lockhart*, 474 U.S. 52,

57, 106 S.Ct. 366, 369 (1985) (quoting *Strickland*, 466 U.S. at 691, 104 S.Ct. at 2067). As the

*Strickland* Court explained:

> Attorney errors come in an infinite variety and are as likely to be utterly harmless
> in a particular case as they are to be prejudicial. They cannot be classified
> according to likelihood of causing prejudice. Nor can they be defined with
> sufficient precision to inform defense attorneys correctly just what conduct to
> avoid. Representation is an art, and an act or omission that is unprofessional in
> one case may be sound or even brilliant in another. Even if a defendant shows
> that particular errors of counsel were unreasonable, therefore, the defendant must
> show that they actually had an adverse effect on the defense.

466 U.S. at 691, 104 S.Ct. at 2067. Requiring a showing of prejudice also serves "the fundamental interest in the finality of guilty pleas." *Hill*, 474 U.S. at 58, 106 S.Ct. at 370 ("'Every inroad on the concept of finality undermines confidence in the integrity of our procedures; and, by increasing the volume of judicial work, inevitably delays and impairs the orderly administration of justice. . . . Moreover, the concern that unfair procedures may have resulted in the conviction of an innocent defendant is only rarely raised by a petition to set aside a guilty plea.'" (quoting *United States v. Timmreck*, 441 U.S. 780, 784, 99 S.Ct. 2085, 2087 (1979))).

"To establish prejudice, the defendant must show 'a reasonable probability that, but for counsel's unprofessional errors, *the result of the proceeding would have been different*.'" *Parker*, 2010 WL 2652212, at *2 (quoting *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052, with emphasis provided in *Parker*). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Johnson*, 604 F.3d at 1022. "Prejudice requires a showing that counsel's poor performance not only is a 'but-for' cause of the complained-of result, *Strickland*, 466 U.S. at 694, but also 'deprives the defendant of any substantive or procedural right to which the law entitles him.'" *Parker*, 2010 WL 2652212, at *3 (quoting *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S.Ct. 838 (1993), and noting at *4 that "[j]ust as oxygen, though a but-for cause or necessary condition of fire, does not legally cause arson, for rather the person setting the fire does," so too defense counsel's misadvice does not always legally cause a defendant's sentence).

In the context of a guilty plea, a defendant establishes prejudice "by showing a reasonable probability that but for counsel's errors, the defendant '*would not have pleaded guilty and would have insisted on going to trial*.'" *Id.* at *2 (quoting *Hill*, 474 U.S. at 59, 106 S.Ct. 366,

with emphasis provided in *Parker*). Where, as here, "the alleged deficiency is a failure to investigate, the movant must provide 'the court sufficiently precise information, that is, a comprehensive showing as to what the investigation would have produced.'" *Richardson v. United States*, 379 F.3d 485, 488 (7th Cir. 2004) (quoting *Hardamon v. United States*, 319 F.3d 943, 951 (7th Cir. 2003)). This failure-to-investigate inquiry "depend[s] on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of the trial." *Hill*, 474 U.S. at 59, 106 S.Ct. at 370. "This is an objective analysis that requires [courts] to examine what a reasonable person would do 'without regard for the idiosyncracies of the particular decisionmaker.'" *Richardson*, 379 F.3d at 488 (quoting *Hill*, 474 U.S. at 60, 106 S.Ct. 366).

Petitioner's claim is not that he would have insisted upon going to trial had his counsel discovered the Guillen 302, but rather that he would have pled guilty earlier. As such, he cannot establish prejudice. *See Hill*, 474 U.S. at 60, 106 S.Ct. at 371; *Wyatt*, 574 F.3d at 458; *Robinson v. United States*, 196 F.3d 748, 753 (7th Cir. 1999), *vacated on other grounds*, 531 U.S. 1108, 121 S.Ct. 851 (2001). The information that Petitioner relies on as the basis for his motion – the type and amount of cocaine involved in the crime according to Mr. Guillen – is a sentencing issue that would have been irrelevant at trial to whether Petitioner committed the charged crime. *See United States v. Trice*, 484 F.3d 470, 475 (7th Cir. 2007).

Furthermore, the record is clear that before pleading guilty, Petitioner was fully aware of how the Court would go about sentencing him and that the government disputed his position regarding drug type and quantity. (*See* R. 4-1, 5/24/06 Change of Plea Hr'g Tr. at 16.)

Significantly, Petitioner also knew that the government was taking the position that the crime involved more than 1.5 kilograms of crack cocaine.  (*Id.* at 22.)

During the change-of-plea hearing, the government stated that the parties had a dispute regarding the type and amount of drugs involved in the crime and that "it's the government's view that the statutory maximum as to Count 1 is life in prison; and, that there's a mandatory minimum term of imprisonment of ten years."  (*Id.*)  When the Court asked defense counsel, "So, am I correct, from what [the government] has said, that you are contesting both the type of drug and the quantity of drug?," defense counsel answered, "Yes, your Honor."  (*Id.* at 17.)  The court then addressed Petitioner directly: "Mr. Adefumi, there is a disagreement among your lawyer and the government's lawyer that I understand you have agreed for the Court to resolve at the time of sentencing; namely, the type of drugs involved in this case and the quantity of drugs.  Is that correct, sir?"  (*Id.* at 19.)  Petitioner responded, "Yes, your Honor."  (*Id.*)

The Court then addressed potential penalties, again directly with Petitioner: "If the government is accurate on Count 1, the crime that you are offering to plead guilty to has a maximum term of imprisonment of life in prison . . . and a term of supervised release of five years up to life.  Do you understand that, sir?"  (*Id.*)  Petitioner responded, "Yes, your Honor."  (*Id.*)  After reviewing additional particulars, the Court summarized: "So, if the government is correct, the maximum term of imprisonment that you are facing by statute is life.  If you are correct, the maximum term you are facing is 60 years; namely, 20 years on each count.  Do you understand that, sir?"  (*Id.* at 20.)  Again, Petitioner responded, "Yes, your Honor."  (*Id.*)  When the Court asked Petitioner if he had "any questions about any of the statutory penalties," Petitioner answered, "No, your Honor."  (*Id.* at 21.)

Furthermore – and significantly – the government stated that it

> believes that there is more than a kilo-and-a-half of crack cocaine involved in this case; and, therefore, we start at an Offense Level of 38. . . . And, therefore, we believe that he's an Offense Level of 38, a Criminal History Category of III, which would leave us with a range under the Guidelines of 292 to 365 months.

(*Id.* at 22.) After defense counsel provided his preliminary Guideline calculation, the Court again addressed Petitioner, informing him that his attorney "and the government vary significantly on what the Guideline range is in this case. If the government is accurate, you will have an Offense Level of 38 with a Criminal History Category of III and a Guideline range of 292 to 365 months. . . . Do you understand that, sir?" (*Id.* at 24.) After conferring with his attorney, Petitioner responded, "Yes, I do understand, your Honor." (*Id.*) Petitioner further expressed his understanding that at sentencing the Court would determine the type and quantity of drugs involved by using the preponderance-of-the-evidence standard. (*Id.* at 26.) The Court also explained to Petitioner that the Court would determine the applicable Guideline range and sentence. (*Id.* at 25.) Further, Petitioner confirmed that neither his attorney nor anyone else had made any promises to him regarding sentencing. (*Id.* at 27.)

During the recitation of the factual basis, the government specifically mentioned Mr. Guillen on multiple occasions. Specifically, the government stated that Petitioner

> conspired with Francisco Periche-Guillen and with others, known and unknown, knowingly and intentionally to distribute and to possess with intent to distribute a controlled substance; namely, in excess of 50 grams of mixtures containing a Schedule II narcotic drug. . . . During [the 2001-2003] time period, the defendant regularly received Schedule II narcotic drug controlled substances from Francisco Periche-Guillen at locations in Chicago. The defendant distributed the narcotics he received from Periche-Guillen to street-level customers in the Humboldt Park neighborhood of Chicago.

(*Id.* at 28.) The Court and Petitioner then engaged in the following colloquy:

| The Court: | Is [the government's] statement correct? |
|---|---|
| Petitioner: | Yes, your Honor. |
| The Court: | Do you disagree with any part of it? |
| Petitioner: | No. |
| The Court: | Are you, in fact, guilty of the crime charged in Count 1? |
| Petitioner: | Yes, your Honor. |
| The Court: | Bearing everything in mind that we have discussed this morning, what is your plea to Count 1 of the superseding indictment? |
| Petitioner: | Guilty. |

(*Id.* at 29.)  Toward the end of the hearing, the government indicated that it could "think of at least five witnesses that we would call" during the sentencing hearing.  (*Id.* at 32.)

Accordingly, Petitioner was clearly aware when he pled guilty that the government sought to hold him responsible for over 1.5 kilograms of crack cocaine.  Additionally, the Guillen 302 was not the only evidence establishing the amount and type of cocaine involved in Petitioner's crime, and the information that Petitioner relies on in his motion relates specifically to events of which Petitioner was fully aware, namely, the amount of crack cocaine that Mr. Guillen sold to him.  Without a showing of prejudice, Petitioner's ineffective-assistance claim must fail.  *See Parker*, 2010 WL 2652212, at *2.

## III.    Certificate of Appealability

Under the 2009 Amendments to Rule 11(a) of the Rules Governing Section 2255 Proceedings, the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Accordingly, the Court must determine whether to grant Petitioner Adefumi a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2).

Section 2255 petitioners do not have the absolute right to appeal a district court's denial of their motions; instead they must first request a certificate of appealability. *See Miller-El v. Cockrell*, 537 U.S. 322, 335, 123 S.Ct. 1029, 1039 (2003). "The purpose of requiring a certificate of appealability is to conserve judicial resources by screening out clearly unmeritorious appeals." *Buie v. McAdory*, 322 F.3d 980, 981 (7th Cir. 2003). A petitioner is entitled to a certificate of appealability only if he can make a substantial showing of the denial of a constitutional right. *See Miller-El*, 537 U.S. at 336, 123 S.Ct. 1029; 18 U.S.C. 2253(c)(2). "A petitioner makes a 'substantial showing where reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.'" *Sandoval*, 574 F.3d at 852 (quoting *Arredondo v. Huibregtse*, 542 F.3d 1155, 1165 (7th Cir. 2008)).

Here, Petitioner has not established that he is entitled to a certificate of appealability. As explained above, Petitioner's claim is doomed because he has not argued or established. prejudice based on the content of the Guillen 302. As such, Petitioner cannot establish that jurists of reason would find the Court's assessment of his constitutional claims debatable or wrong. *See Sandoval*, 574 F.3d at 847.

## CONCLUSION

For these reasons, the Court denies Petitioner Olu Adefumi's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.

Dated:  August 11, 2010                          ENTERED:

 

 

AMY J. ST. EVE
United States District Court Judge

13